IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**CRESTWOOD MEDICAL CENTER**              )
1 Hospital Drive Southwest                )
Huntsville, AL 35801                      )
                                          )
**WESTERN ARIZONA REGIONAL**              )
**MEDICAL CENTER**                        )
2735 Silver Creek Road                    )
Bullhead City, AZ 86442                   )
                                          )
**SANTA ROSA MEDICAL CENTER**             )
6002 Berryhill Road                       )
Milton, FL 32570                          )
                                          )
**KOSCIUSKO COMMUNITY HOSPITAL**          )
2101 East Dubois Drive                    )
Warsaw, IN 46580                          )
                                          )
**DUPONT HOSPITAL**                       )
2520 E Dupont Road                        )
Fort Wayne, IN 46825                      )
                                          )
**MERIT HEALTH RIVER REGION**             )
2100 US-61                                )
Vicksburg, MS 39183                       )
                                          )
**EASTERN NEW MEXICO**                    )
**MEDICAL CENTER**                        )
405 W Country Club Road                   )
Roswell, NM 88201                         )
                                          )
**MOUNTAIN VIEW REGIONAL**                )
**MEDICAL CENTER**                        )
 4311 E Lohman Avenue                     )
Las Cruces, NM 88011                      )
                                          )
**PONCA CITY MEDICAL CENTER**             )
1900 North 14th Street                    )
Ponca City, OK  74601                     )

1
COMPLAINT
FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

| | |
|---|---|
| **SKYRIDGE MEDICAL CENTER**<br>2305 Chambliss Avenue NW<br>Cleveland, TN 37311<br><br>**GREENBRIER VALLEY MEDICAL CENTER**<br>1320 Maplewood Avenue<br>Ronceverte, WV 24970<br><br>                    Plaintiffs,<br><br>          v.<br><br>**ROBERT F. KENNEDY, JR.,** In his Capacity as<br>Secretary of the U.S. Department<br>of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

This is a civil action brought to obtain judicial review of a final decision rendered by the Provider Reimbursement Review Board (the "PRRB" or "Board"), acting as a component of the United States Department of Health and Human Services ("HHS"). The determination for which judicial review is hereby sought is the dismissal of PRRB Case No. 25-0856GC.

## JURISDICTION AND VENUE

1. This action arises under Title XVIII of the Social Security Act, as amended 42 U.S.C. §§ 1395 *et. seq*. (hereinafter, the "Medicare Act," the "Act," or the "Medicare program") and 5 U.S.C. §§ 706 *et. seq*. (hereinafter, the "Administrative Procedure Act" or the "APA").

2. The Medicare payment issue in this action pertains to how inpatient hospital days should be counted for purposes of calculating each of the Plaintiffs' (hereinafter, "Plaintiffs," "Providers," or "Plaintiff Providers") respective Medicare Disproportionate Share Hospital ("DSH") payments for their cost reports ending within calendar year ("CY") 2022 included in the subject Common Issue Related Party ("CIRP") Group.

3. This Court has jurisdiction under 42 U.S.C. § 1395oo(f), and 28 U.S.C. § 1361. Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f), and 28 U.S.C. § 1391(e).

4. Further, this Court has jurisdiction under 42 U.S.C. § 1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1391(e) because:

    (a) Each Provider filed cost report(s) (for various fiscal year ends ("FYE"), *infra.*) as required by 42 U.S.C. § 1395oo(a);

    (b) Each Provider was dissatisfied with their respective fiscal intermediary's final determination, ". . . as to the amount of total program reimbursement due the provider . . . for the period

        covered by such report," as required by 42 U.S.C. § 1395oo(a)(1)(A)(i);

    (c) The aggregate amount in controversy for the subject CIRP Group exceeds $50,000, as required by 42 U.S.C. § 1395oo(b);

    (d) Each Provider was timely added to the CIRP Group appeal with the PRRB pursuant to 42 U.S.C. §1395oo(a)(3);

    (e) The Board effectively dismissed the Providers' CIRP Group appeal by notifying each Provider on December 16, 2025, that the appeal in which it was participating had been dismissed;

    (f) In accordance with 42 U.S.C. § 1395oo(f)(1), this civil action is filed within sixty (60) days of the date that each Provider was notified by the PRRB in writing that its appeal was dismissed as evidenced by its letter dated December 16, 2025. (PRRB dismissal letter is attached hereto as **Exhibit A**).

5.    Plaintiffs have exhausted all administrative remedies under federal law.

## PARTIES AND RELEVANT AGENCIES

6.    Each Plaintiff herein is an acute care, in-patient healthcare facility that serves a disproportionate share of low-income patients. At all relevant times, each Plaintiff Provider had a Medicare provider agreement with the Secretary of HHS and was eligible to participate in the Medicare program. Per the "Schedule of Providers" (attached hereto as Exhibit B), this case is with respect to the eleven (11) Providers participating in the subject CIRP Group in PRRB Case No. 25-0856GC, with each such Provider appealing the same issue for CY 2022. (Ex. B at 2).

7.        Each Plaintiff Hospital is located in the city and state as so designated, below:

CRESTWOOD MEDICAL CENTER. Huntsville, AL 35801

WESTERN ARIZONA REGIONAL MEDICAL CENTER. Bullhead City, AZ  86442

SANTA ROSA MEDICAL CENTER,  Milton, FL 32570

KOSCIUSKO COMMUNITY HOSPITAL, Warsaw, IN 46580

DUPONT HOSPITAL, Fort Wayne, IN 46825

MERIT HEALTH RIVER REGION, Vicksburg, MS 39183

EASTERN NEW MEXICO MEDICAL CENTER, Roswell, NM 88201

MOUNTAIN VIEW REGIONAL MEDICAL CENTER, Las Cruces, NM 88011  PONCA CITY MEDICAL CENTER, Ponca City, OK 74601

SKYRIDGE MEDICAL CENTER, Cleveland, TN 37312

GREENBRIER VALLEY MEDICAL CENTER, Ronceverte, WV 24970.

8.        Defendant, Robert F. Kennedy Jr., Secretary of HHS (the "Secretary"), 200 Independence Avenue, S.W., Washington D.C. 20201, or his predecessors in office, is the federal officer responsible for the administration of the Medicare program. Defendant Kennedy is sued in his official capacity.

9.        The Centers for Medicare & Medicaid Services ("CMS") administers the Medicare program by delegation from, and as agent of, the Secretary.

10.       The Medicare Administrative Contractors ("MACs" or individually "MAC") are organizations that administer the Medicare program in a given area under contract with CMS pursuant to 42 U.S.C. § 1395h. For the Medicare group appeal at issue, the MAC designated as the CMS representative was Wisconsin Physicians Service Government Health Administrators ("WPS").

11. The PRRB is an agency of HHS and acts as an administrative hearing body for Medicare reimbursement disputes between providers of Medicare services and MACs pursuant to 42 U.S.C. § 1395oo.

12. As set forth more fully below, Plaintiffs object to the dismissal of their group appeal by the PRRB as arbitrary, capricious, overly punitive and an unreasonable and abusive display of the discretionary powers otherwise granted to the agency.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

13. Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 291, as amended by 42 U.S.C. §§ 1395 *et. seq*. (hereinafter, the "Medicare program"), establishes a program of medical benefits for persons aged 65 or older, for persons under age 65 who are disabled, and for persons with end-stage renal disease. CMS, formerly the Health Care Financing Administration ("HCFA"), is the operating component of HHS charged with administering the Medicare program.

14. Medicare reimburses the operating costs of short-term acute care hospital inpatient services primarily through the hospital Inpatient Prospective Payment System ("IPPS"). 42 U.S.C. § 1395ww(d). The IPPS Statute (the "Statute") contains several provisions that adjust reimbursements based on provider-specific factors. *See* 42 U.S.C. § 1395ww(d)(5). This case involves the provider-specific DSH adjustment, which requires the Secretary to provide increased IPPS reimbursement to providers that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

15. Whether a provider qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the provider's "disproportionate patient percentage" ("DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the so-called "Medicare Fraction" and the "Medicaid Fraction," for a provider's fiscal period. 42 U.S.C. § 1395ww(d)(5)(F)(vi). Providers

whose DSH percentages meet certain thresholds receive an adjustment which results in increased IPPS payments for inpatient hospital services. 42 U.S.C. § 1395ww(d)(5)(F)(ii).

16. The first fraction is the Medicare Fraction, also known as the "SSI Fraction." The Medicare Fraction's numerator is the number of a provider's inpatient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income ("SSI") benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). This case involves this first fraction - the Medicare Fraction.

17. The second fraction is the Medicaid Fraction. The Medicaid Fraction's numerator is the number of a provider's inpatient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX of the Social Security Act, 42 U.S.C. § 1396-1 *et seq.*, for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the provider's inpatient days for such period. *Id*.

18. The Statute provides that a provider's DPP shall be determined according to the provider's cost reporting period. 42 U.S.C. 1395ww(d)(5)(F)(vi) ("in this subparagraph, the term 'disproportionate patient percentage' means, with respect to a cost reporting period of a hospital..."). The Secretary is not permitted to change the underlying substantive standards used in processing the provider's original DPP, regardless of whether such change would be beneficial or detrimental to the provider.

19. The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and was made effective beginning with discharges on or after May 1, 1986. Pub. L. No. 99272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

20. The Secretary implemented the DSH program through the publication of an interim final rule on May 6, 1986. 51 Fed. Reg. 16,772 (May 6, 1986). In the May 6, 1986 final rule, the Secretary decreed that only Medicare beneficiaries who are "recipients" of SSI, *i.e.*, only those Medicare beneficiaries who have *received* payment in a given month will have their inpatient hospital stay days counted in the numerator of the Medicare Fraction for that month. *Id.* at 16,777.

21. In the August 16, 2010 final rule, the Secretary maintained that "our policy has always been to include only Medicare beneficiaries who are entitled to receive SSI benefits in the numerator of the SSI fraction." 75 Fed. Reg. 50,042, at 50,280 n.19 (Aug. 16, 2010). The Secretary's policy is that only Medicare beneficiaries who are paid SSI cash benefits for a given month are "entitled to receive SSI benefits" for purposes of including the inpatient days associated with such beneficiaries in the numerator of the SSI Fraction.

22. As noted above, the Medicare fraction is calculated by using: (a) in the numerator, the "number of such hospital's patient days...which were made up of patients who (for such days) were *entitled* to benefits under Medicare Part A and were *entitled* to supplemental security income benefits...under subchapter XVI of this chapter..."; and (b) in the denominator, the number of days of care that are furnished to patients who were *entitled* to Medicare Part A. (Emphasis added). The dispute in this case, therefore, involves the Providers' appeal of CMS's determination of which patients are "entitled to" both Medicare Part A and SSI benefits for purposes of the Medicare fraction of the DSH calculation. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I); 42 C.F.R. § 412.106(b)(2)(i)(B).

23. CMS's payment and audit functions under the Medicare program are contracted out to MACs. MACs determine payment amounts due to the providers under Medicare law and regulations. 42 U.S.C. § 1395h, 42 C.F.R. §§ 413.20(b) and 413.24(b). Although the MAC calculates the DPP, CMS computes the SSI fraction.

24. At the close of its fiscal year ("FY"), a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. The MAC reviews the cost report, determines the total amount of Medicare reimbursement due to the provider and issues the provider a Notice of Program Reimbursement ("NPR").

## THE RELEVANT MEDICARE APPEALS PROCESS

25. At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare NPR, which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital is also required to make a claim, or alternatively self-disallow, for any adjustment to its basic IPPS payment adjustment, such as the DSH adjustment. 42 C.F.R. § 413.24(j).

26. If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the Board by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835(a). In addition to

having the authority to make substantive decisions concerning Medicare reimbursement appeals, the Board is authorized to decide questions relating to its jurisdiction and procedure. *See* 42 U.S.C. § 1395oo. Further, the Board is required to "affirm, modify, or reverse . . . ***and*** to make any other revisions on matters covered by such cost report[.]" *See* 42 U.S.C. § 1395oo(d) (emphasis added). That is, the Board cannot avoid making necessary revisions on matters properly before it.

27. The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875, 405.1877. The Secretary has delegated its authority under the statute to review the Board decisions to the CMS Administrator. *See* 42 C.F.R. §§ 405.1875, 405.1877. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the Board or the decision of the CMS Administrator after reviewing the Board's decision. *See* 42 C.F.R. § 405.1877(a)(2).

28. A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. § 1395oo(f)(1). The date of receipt of such a decision is presumed to be five (5) days after the date of issuance. *See* 42 C.F.R. § 405.1801(a)(1)(iii). The Secretary is the proper defendant in such an action. *See* 42 C.F.R. § 405.1877(a)(2). Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. § 1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

29.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5 of the U.S. Code, which contains the Administrative Procedure Act (APA). Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

## FACTS SPECIFIC TO THIS MATTER

30.     It is acknowledged by the PRRB that it received Plaintiffs' CIRP Group Appeal Request. The subject of the CIRP group appeal was described as: "Improper Rulemaking-Disproportionate Share Hospital Payment-SSI/Medicare Fraction-Dual Eligible Days (Exhausted Part A Benefit Days, Medicare Secondary Payor Days, and No-Pay Part A Days."

31.     The specific Statement of Issue submitted by Plaintiffs to the Board was, "Whether patient days associated with patients entitled to Medicare Part A for whom no Medicare Part A payment is made and who are eligible for Title XIX should be excluded from the Medicare fraction and included in the numerator of the Medicaid fraction of the Medicare Disproportionate Share Hospital ("DSH") calculation?"

32.     In the August 11, 2004 CMS Final Rule effective with respect to patient discharges on or after October 1, 2004, the Secretary deleted the word, "covered" where it previously appeared in the definition of the Medicare fraction in 42 C.F.R. §412.106(b)(2)(i). Thus, both exhausted benefit and Medicare secondary payment days associated with patient discharges occurring on or after October 1, 2004 are included in the *Medicare* fraction. Consistent with this regulation, inpatient days not covered remain in the DSH Medicare fraction, *even* for patients entitled to

Medicaid. Ultimately, the 2004 Final Rule was vacated by the courts as being improperly and ineffectively promulgated.

33. Plaintiffs seek to challenge the inclusion of non-covered patient days in the Medicare fraction, i.e., patient days not actually paid by the Medicare program, who are eligible for Title XIX (state Medicaid Plan) coverage. This category of patients includes exhausted benefit days, as well as Medicare secondary benefit days, in which payment for the specific patient days at issue are not actually paid by the Medicare program. Plaintiffs contend that such days should be excluded from the DSH Medicare fraction and included in the DSH Medicaid fraction.

34. However, and as noted more fully, below the critical issues raised by Plaintiffs to the Board were never adjudicated, as the Board chose to dismiss the appeals before a hearing was ever commenced, and as noted, for the flimsiest of reasons.

35. At the outset of the appeals process, on November 21, 2024, Plaintiffs retained the services of Hall, Render, Killian, Heath & Lyman, P.C. ("Hall Render") as its DSH reimbursement group representative, who thereafter formed the "CHS CY 2022 DSH SSI Dual Eligible Days CIRP Group" under PRRB Case number 25-0856GC. The group included thirteen participating hospitals each under common ownership, hence the CIRP group designation.

36. On **November 25, 2024**, the Board acknowledged the appeals case in a Case Acknowledgment and Critical Due Dates notification ("ACDD"). That notice gave the current group representative, Hall Render, a **November 21, 2025** (less than one year) deadline to file the "Group's Comments Regarding Full Formation- The comments must advise the Board whether the group is complete (i.e., fully formed), and if not, must specifically identify which providers within the related party chain organization have not yet received a final determination for the appealed year." *See,* Exhibit A. The Board cited its Rule 19 as the authority for this missive.

Case 1:26-cv-00490-TJK   Document 1   Filed 02/14/26   Page 13 of 19

The information sought by the Board in this rather verbose warning can be distilled as one requiring a simple notification to the Board whether the CIRP group was fully formed with each effected hospital. Interestingly, in years gone by, if the representative for the hospital failed to respond by the deadline date, the Board would simply adopt the assumption that the CIRP group was fully formed, and without penalty to the appealing hospital(s) (such as dismissal of the appeal) for not responding either at all, or by the deadline date. That most reasonable policy by the Board has since been abandoned, creating Rule 19 so as to catch those who incidentally miss this prescribed deadline date, and thereafter, may result in a dismissal of the hospital's appeal without adjudication, resulting in the loss of additional DSH reimbursement to the hospital in the thousands or even millions of dollars.

37. Plaintiffs' group representative was changed on **July 28, 2025**, to Quality Reimbursement Services, Inc. ("QRS"). Unfortunately, and during the course of the exchange of responsibilities for this appeal from Hall Render to QRS, portions of the file were not transferred to QRS including the Board's letter of November 25, 2024 requiring a responsive, "Group's Comments Regarding Full Formation" by November 21, 2025.

38. On November 25, 2025, the Board issued a determination **deeming the group to be fully formed** and ordering QRS to show cause why the group should not be dismissed for having missed the "Comments Regarding Full Formation" deadline. (attached as Exhibit A). The phrase, "deeming the group to be fully formed" is highlighted, above as pertinent to Plaintiffs' argument that eventually dismissing Plaintiffs' appeal despite the Board acknowledgement that the CIRP group was then "closed" in light of the absence of a response demonstrates the Board's pre-determined intention to dismiss Plaintiffs appeals as of November 25, 2025 and despite the

13
COMPLAINT
FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Board's expressed but insincere, token gesture to allow the representative to submit a "show cause" response as if any explanation would prevent a dismissal.

39. QRS, on behalf of Plaintiffs, clarified in its response (attached as Exhibit C) to the Board's Show Cause Order issued on November 25, 2025, that "Due to the change of representative, the original PRRB Acknowledgement and Critical Due Dates Notice was not provided directly to QRS. Thus, the Board's deadline to file the 'Group's Comments Regarding Full Formation' was missed, as QRS was not immediately aware of that deadline and did not submit its comments regarding the full formation of the group in Case No. 25-0856GC by the November 21, 2025, deadline." (Ex. D at 2).

40. QRS further contended that dismissal of the subject appeal would have been "an unduly harsh and punitive response" to the procedural missteps highlighted by the Board, given that the Board had already deemed the group fully formed, thereby disallowing any other providers from being added into the CIRP Group appeal. (*See* Ex. D at 2-3).

41. QRS went on to acknowledge that "While the Board Rules and related regulations **permit** dismissal in appropriate circumstances, they plainly **do not require or mandate** dismissal for every procedural infraction. The Board retains broad discretion to determine when dismissal is appropriate, and QRS respectfully submits that, under the circumstances here, **dismissal is not appropriate**. The missed deadline was unintentional, non-prejudicial, and occurred due to a change in representation—factors that fall squarely within the type of situations where the Board's discretion should be exercised to preserve, rather than foreclose, a Provider's right to review." (Ex. D at 3) (emphasis in original).

42. The PRRB maintained that "QRS failed to meet its responsibilities per Board Rule 5.2, which requires the representative to meet Board deadlines and respond timely to

correspondence or requests from the Board," further stating that "QRS failed to comply with Board Rule 19.2, which requires that 'at the one-year mark . . . , they must notify the Board if the group is complete and, if not, which providers have not yet received a final determination for the specified fiscal year and intend to join the group.'" (Ex. A at 3).

43. Finally, the Board exercised "its discretionary authority in 42 C.F.R. § 405.1868 and Board Rule 41.2" to dismiss Plaintiffs' appeal. (Ex. A at 4).

44. Plaintiffs contend that although the Board does retain such discretionary authority, the Board's rationale for, and actions preceding, its dismissal reflect the Board's arbitrary, capricious, and overly punitive nature by its dismissal of the appeal.

45. Board Rule 19 entitled, "Full Formation of Groups", and more specifically, Rule 19.2 "Mandatory CIRP Groups" applies in the instant matter. A focus upon this rule clearly demonstrates the illogical nature of the Board's decision to levy the harshest penalty against Plaintiffs, that is to dismiss its appeal despite the reasonable explanation of QRS in its response to the Board:

> 19.2   Mandatory CIRP Groups
>
> Mandatory CIRP group appeals must contain all providers eligible to join the group which intend to appeal the disputed common issue. The Board will determine that a CIRP group appeal is fully formed upon:
>
> - written notice from the group representative that the group is fully formed, or
> - a Board order issued after the group representative has the opportunity to present evidence regarding whether any CIRP providers who have not received final determinations could potentially join the group.
>
> Within the Board's Acknowledgment of a CIRP group appeal, the providers are notified that at the one-yar mark (if they had not previously done so) they must notify the Board if the group is complete, and if not, which providers have not yet received a final determination for the specified fiscal year.

46. Noteworthy is the fact that while the Board acknowledges in its December 16, 2025 letter to QRS (Exhibit A) that it was aware that on July 28, 2025, the group representative changed from Hall, Render to QRS but it is clear that the Board did not, nor did it intend to provide QRS with a heads-up (i.e., within a letter acknowledging the change of representative) of the <u>November 21, 2025</u> deadline to respond to its requirement of "Group's Comments Regarding Full Formation" and its accompanying threat to dismiss the appeals with non-compliance, a death knell for the Hospital's appeals.

47. Additionally, the Board is unable to demonstrate a shred of prejudice arising from QRS's responsive letter of December 20, 2025 (a mere nineteen days beyond the imposed deadline date) that it or the agency suffered by this minor delay. Atop the fact that it appears quite clear that after the deadline date of November 21, 2025 passed, the Board assumed that the CIRP group of participants was now closed and without extenuating circumstances presented, no new participant could be added anyway.

48. Finally, and in exercising its clear discretionary powers to either dismiss or maintain the active status of the appeal after the deadline of November 21 had passed, the Board seems to have shown a bias against Plaintiffs' representative, QRS in its comments (Exhibit A at 2) by stating, "In addition, the Board is aware that this is not the first instance in which it [QRS] has failed to meet the "Comments Regarding Full Formation" deadline in a group, which QRS has admitted was due to its own oversight."  Hence, the cards were stacked against Plaintiffs through the Board's biased view of its representative, and no explanation offered by QRS would likely have avoided the wholly unnecessary dismissal of the appeal when in fact no new CIRP participant was needed to be added to the group.

49. The Board's actions in dismissing the appeals were arbitrary and capricious, and an abuse of its discretion;

    (a) in its knowledge that a change was made in the representation of Plaintiffs from one association (Hall, Render) to another (QRS) and the possibility that some documents might not be successfully transferred from one entity to the other;

    (b) in its failure to offer QRS a letter of reminder or to inquire as to the status of the CIRP group in view of the acknowledged change from one entity to the other;

    (c) in the fact that no prejudice whatsoever can be shown by the Board or agency in the nineteen delay in response to the Board by QRS after receiving the Board's November 25, 2025 letter offering to consider QRS letter of cause (by which time, Plaintiffs allege, the Board's decision to maintain its stance on its dismissal of Plaintiffs' appeal was likely already made); and,

    (d) It is implicit in the verbiage used by the Board in its December 16, 2025 determination letter (Exhibit A) that its decision to carry out its intentions to dismiss Plaintiffs' appeal was a foregone conclusion, based upon a bias towards Plaintiffs' representative.

## COUNT I

**Judicial Review Under the Medicare Act and the APA**
**(The Board's Dismissal of the CIRP Group appeal was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Contrary to Law)**

50. Plaintiff Hospitals incorporate by reference paragraphs 1-49 of this Complaint.

51. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" 5 U.S.C. § 706(2)(A).

52. The Board's dismissal of Plaintiffs' CIRP Group appeal was arbitrary, capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests for an Order:

(a) Reversing and setting aside the PRRB decision of dismissal of the Plaintiffs' appeal.

(b) Remanding the appeal back to the Board for full adjudication on the merits;

(c) Awarding the costs of suit incurred by Plaintiffs;

(d) Awarding Plaintiffs interest as required by 42 U.S.C. §1395oo(f)(2); and,

(e) For such other and further relief as the Court may deem just and proper under the circumstances.

Dated: February 14, 2026

Respectfully submitted,

By: /s/ Alan J. Sedley
Alan J. Sedley, Esq. Bar OH0017
18880 Douglas, Suite 417
Irvine, CA 92612
(818) 601-0098
asedley@sedleyhealthlaw.com

Attorneys for Plaintiffs